IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRI LYNN WALLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 14-254 |
| ) | |
| CAROLYN W. COLVIN, ) | Magistrate Judge Cynthia Reed Eddy[1] |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

### I. Introduction

Plaintiff Terri Lynn Walls brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). *See* 42 U.S.C. §§401-434. The parties have submitted cross-motions for summary judgment and the record has been fully developed at the administrative proceedings. For the reasons that follow, Plaintiff's Motion for Summary Judgment will be denied. Defendant's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

### II. Procedural History

Plaintiff filed for DIB on September 13, 2010, alleging onset of disability as of October 1, 2008 due to fibromyalgia, high blood pressure, asthma, anxiety, and post-traumatic stress

---

[1] By consent of the parties (ECF Nos. 12, 13), and pursuant to the Federal Magistrate judges Act, 28 U.S.C. §636(c), the undersigned has full "authority over dispositive motions ... and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003); *see In re Search of Scranton Hous. Auth.*, 487 F. Supp. 2d 530, 535 (M.D. Pa. 2007).

1

disorder ("PTSD"). (R. 96-99, 129.) The application was denied by the state agency initially and on reconsideration. (R. 78-79.) Plaintiff responded on February 25, 2011 by filing a timely request for an administrative hearing. (R. 90-91.) On April 27, 2012, an administrative hearing was held in Fort Meyers, Florida before Administrative Law Judge ("ALJ") Larry Butler. (R. 43-69.) Plaintiff, who was represented by counsel, appeared and testified. (R. 45-68.)

In a decision dated August 20, 2012, the ALJ determined that Plaintiff was not "disabled" within the meaning of the Act from the time of her alleged onset of disability, and her claim for benefits was therefore denied. (R. 19-27.) The Appeals Council denied Plaintiff's request for review on September 9, 2013, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. 7-11.)

Plaintiff commenced the present action on February 26, 2014, seeking judicial review of the Commissioner's decision. (ECF Nos. 1, 3.) Plaintiff and the Commissioner filed cross-motions for summary judgment on August 15, 2014 and September 15, 2014, respectively. (ECF Nos. 8, 10.) These motions are fully briefed and ripe for disposition.

### III. Statement of Facts

Plaintiff was 49 years old as of the date of her alleged onset of disability. (R. 46.) She completed high school and one and a half years of business school. (R. 47, 130.) Her past relevant employment includes work as a home health aide from 2007 to 2008 and work as a housekeeper from 2003 to 2006. (R. 49, 130.) Based on her earnings records, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2010. (R. 21.)

Plaintiff contends that she is unable to work due to a variety of ailments, including fibromyalgia, post-traumatic stress disorder related to past abuse and a sexual assault,

2

depression, panic attacks, chronic bladder infections, asthma, chronic bronchitis, irritable bowel syndrome, a hiatal hernia, obesity, and high blood pressure. (R. 53, 54, 55, 58-59, 183-84.) She takes Prozac and Vistaril, which help somewhat in ameliorating her depression and anxiety-related symptoms. (R. 58.) She also takes medication to control her high blood pressure, recurrent heartburn, and frequent sinus congestion. (R. 181-82.) She claims to experience constant back and shoulder pain and uses heating packs, massage therapy, Advil and Tylenol, and chiropractic care to address these symptoms. (R. 139, 154-56, 182.) Her reports to the Agency indicate that she has great difficulty with repetitive bending or kneeling, lifting more than 25 pounds, and sitting more than two hours or walking more than 15 minutes without rest due to pain, fatigue, and weakness. (R. 136-43, 156.)

Plaintiff testified that she typically goes to bed at 7:30 or 8:00 at night and has difficulty sleeping due to nightmares. (R. 60.) Sometimes she will go back to sleep from 7:00 to 9:00 a.m. (R. 61.) She states that her typical day consists of reading the newspaper, doing light housework, preparing simple meals, watching television, and talking on the phone. (R. 61-62, 136-38, 140.) She will drive to the grocery store but does not like to drive great distances or in busy traffic. (R. 49, 63.) She testified to feeling exhausted and sitting most of the day and claims to have difficulty concentrating and focusing on tasks and adapting to changes in her routine. (R. 61, 64-65.) She can handle her own personal care. (R. 136-38.)

Included in the administrative record are treatment notes from Cape Coral Hospital, Internal Medical Associates, Lee Physicians Group, and several different chiropractors from whom Plaintiff sought treatment during the time span 2003 through 2012. The treatment records reflect that:

> [b]eginning in 2008, [Plaintiff began] consultations with Dr. Demetrios Gonis, M.D. and Dr. Xiomara Morillo-Azcuy, M.D., regarding occasional chest pain and

3

shortness of breath long associated with respiratory infections, flare-ups of asthma and elevated blood pressure. (Ex. 17F, pp. 1-2; Ex. 15F, pp 1-6; Ex 3F, pp. 7-11; Ex. 7F, pp. 1-7). Further, an October 2009 echocardiogram revealed a small pericardial effusion with tricuspid regurgitation (Ex. 3F; 5F). Meanwhile, diagnostic studies during chiropractic treatment revealed degeneration and a possible compression fracture of the claimant's cervical spine along with joint degeneration in the knees (Ex. 1F-4F). As of March 2012, the claimant continued to seek treatment for hypertension as well as recurrent urinary tract infections, causing both incontinence and urgency (Ex. 6F; 7F;13F).

(R. 22.)

With regard to Plaintiff's alleged mental impairments, the ALJ observed that Plaintiff's medical history revealed:

> no more than conservative mental health treatment with medication and monthly outpatient consultations (Ex 14E; 15E). In fact, the claimant never sought psychological intervention prior to her intake at Lee Mental Health in November 2010, more than two years after her alleged disability onset date (Ex 11F, p.1). More importantly, within her conservative treatment, she exhibited "logical and goal directed" thought with "fair" judgment and insight. (Ex.11F, p. 11). Granted, her counselors identified evidence of depression, but [in] October 2010, her treating medical providers found no mental impairment that would "significantly interfere with daily functioning" (Ex. 8F). In December 2010, after only two months of medication and counseling, the claimant warranted a Global Assessment of Functioning (GAF) of 65, signifying no more than mild social and occupational implications (Ex. 11F, p. 12). ...

(R. 23.) As of October 26, 2010, and January 31, 2011, two psychologists from the state agency found insufficient evidence in the record from which to conduct a psychiatric review technique. (R. 312-25, 347-60.) In February of 2012, nearly two years after Plaintiff's insured status expired, her treating psychiatrist completed a mental residual functional capacity questionnaire in which she assigned Plaintiff marked limitations in certain areas of mental functioning and opined that Plaintiff's mental condition would likely deteriorate under the stress of a job. (R. 410-12.)

### IV. Administrative Decision

To be eligible for Social Security benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a

4

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir.1986). Because Plaintiff's insured status expired on April 1, 2010, her disability had to be established prior to that date. *See* 20 C.F.R. §404.131; *Zirnsak v. Colvin*, 777 F.3d 607, 613 (3d Cir. 2014) ("Under 20 C.F.R. §404.131, a claimant is required to prove that she became disabled prior to the expiration of her insured status.").

When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520. The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria for one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listed Impairment"); (4) whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is not capable of performing her past relevant work, whether she can perform any other work which exists in the national economy. 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003). If the claimant is found to be unable to resume previous employment, the burden shifts to the Commissioner at Step 5 to prove that, given the claimant's mental or physical limitations, age, education, and work experience, she is able to perform substantial gainful activity in jobs in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir.1986).

In this case, the ALJ denied Plaintiff's claim at the fifth step of analytical process. (R. at 26.) At Step One, the ALJ found that the Plaintiff had not engaged in substantial gainful activity

5

since her alleged onset of disability through March 31, 2010, when she was last insured. (R. 21.)
At Step Two, he concluded that Plaintiff had the following severe impairments: fibromyalgia, degenerative disc disease of the cervical spine, degenerative joint disease of the knees, hypertension, asthma, obesity, and chronic urinary tract infections. (R. at 21.)[2] At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a Listed Impairment. (R. at 24.) Next, for purposes of his analysis at Steps Four and Five, the ALJ concluded that:

> through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except the work must involve no more than occasional crawling, crouching, climbing, balancing, stooping, or kneeling. Further, the claimant should have no concentrated exposure to workplace hazards, such as moving machinery or unprotected heights.

(R. at 24.) Based on his RFC determination, the ALJ determined at Step Four that Plaintiff could not perform any of her past relevant work. At Step Five, the ALJ utilized the Commissioner's medical-vocational guidelines and concluded that Plaintiff could perform jobs that existed in significant numbers in the national economy. (R. 25-26.) Accordingly, the ALJ found that the Plaintiff was not "disabled" within the meaning of the Act at any time from her alleged onset date through the date that she was last insured. (R. 26.)

## V. Standard of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute, and is plenary as to all legal issues. 42 U.S.C. §§ 405(g); *Shaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir.1999). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. *See* 5 U.S.C. § 706. The District Court must then determine

---

[2] The ALJ found that, through the date that Plaintiff was last insured, her alleged mental impairments were not "severe." Plaintiff does not challenge this finding for present purposes.

6

whether substantial evidence exists in the record to support the Commissioner's findings of fact. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A District Court cannot conduct a *de novo* review of the Commissioner's decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis, *Chenery*, 332 U.S. at 196–197. Further, "even where this court acting *de novo* might have reached a different conclusion ... so long as the agency's fact finding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190–1091 (3d Cir.1986).

## VI. Discussion

Where, as here, the claimant cannot perform any past relevant work as a result of severe impairments, the ALJ is required to consider the claimant's residual functional capacity for work ("RFC") as well as her age, education, and prior work experience in order to determine if she can "make an adjustment to other work." 20 C.F.R. §416.920(a)(4)(v); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir.1986). Here, the ALJ found that, as of the date Plaintiff was last insured, she was capable of performing a limited range of light work requiring no more than occasional crawling,

7

crouching, balancing, stooping, or kneeling with no concentrated exposure to work place hazards such as moving machinery or unprotected heights. (R. 24.) Utilizing the Medical Vocational Guidelines set forth in Rule 202.21 (for light work), the ALJ found that Plaintiff was not "disabled" within the meaning of the Act in light of her RFC, age, education, and work experience. (R. 25-26.) The ALJ noted that, under Rule 202.00, "the residual functional capacity to perform light work includes the residual functional capacity for work at the lesser functional level of sedentary work as well and therefore represents substantial work capability for jobs in the national economy at all skill and physical demand levels." (*Id.*) *See* 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 202.00(a). The ALJ also observed that "[a]pproximately 1,600 separate sedentary and light unskilled occupations can be identified across 8 broad occupational categories as set forth in Medical-Vocational Rule 202.00, and each of these 1,600 occupations represent numerous jobs in the national economy that can be performed after a short demonstration, or within 30 days, and do not require special skills or experience." (R. 26.) *See* Rule 200.00(a). Although the ALJ recognized that Plaintiff's RFC included certain nonexertional limitations,[3] he concluded – based on Social Security Rulings ("SSRs") 85-15 and 96-9p – that these nonexertional limitations "had little or no effect on the occupational base of unskilled work." (R. 26.)

On appeal, Plaintiff does not challenge any aspect of the ALJ's RFC determination, but she does object to his reliance on the Medical Vocational Guidelines and the cited Social Security Rulings in arriving at his finding that Plaintiff could perform jobs that exist in significant numbers in the national economy. Citing *Sykes v. Apfel*, 228 F.3d 259, 261 (3d Cir.

---

[3] Exertional limitations are those that affect the "ability to meet the strength demands of jobs ... for sitting, standing, walking, lifting, carrying, pushing, and pulling." 20 C.F.R. § 404.1569a(a). Nonexertional limitations are any other limitations, such as Plaintiff's postural restrictions (*i.e.*, her limited ability to crawl, crouch, climb, balance, stoop, or kneel) and environmental limitations (*i.e.*, her need to avoid concentrated exposure to hazards such as moving machinery and unprotected heights). *Id.*; SSR 96–9p.

8

2000) and the Commissioner's subsequent Acquiescence Ruling 01-1(3) ("AR 01-1(3)"), Plaintiff argues that the Grids are not fully applicable in a situation like this where a claimant suffers from nonexertional impairments in addition to exertional impairments. According to Plaintiff, the ALJ was required to obtain testimony from a vocational expert in order to determine the extent to which Plaintiff's nonexertional limitations erode her occupational base. This Court does not agree.

When a claimant has solely exertional limitations, his or her disability status is determined by the medical–vocational guidelines "without reference to additional evidence." *Sykes*, 228 F.3d at 269. By comparison, where an individual has an impairment or a combination of impairments resulting in both exertional and nonexertional limitations, if a finding of disability is not possible based on exertional limitations alone, the guidelines "provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." *Id.* (*quoting* 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2) (1999)). In *Sykes*, the Third Circuit Court of Appeals held that:

> in the absence of a rulemaking establishing the fact of an undiminished occupational base, the Commissioner cannot determine that a claimant's nonexertional impairments do not significantly erode his occupational base under the medical-vocational guidelines without either taking additional vocational evidence establishing as much or providing notice to the claimant of his intention to take official notice of this fact (and providing the claimant with an opportunity to counter the conclusion).

228 F.3d 259, 261 (3d Cir.2000) (emphasis added). The court subsequently held in *Allen v. Barnhart*, 417 F.3d 396 (3d Cir. 2005), that, "if the [Commissioner] wishes to rely on an SSR as a replacement for a vocational expert, it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." *Id.* at 407.

9

Here, the Social Security Rulings on which the ALJ relied provide sufficiently clear support for his finding that Plaintiff's nonexertional limitations do not significantly erode the occupational base for light and sedentary work. SSR 96-9p provides that "[p]ostural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996). "[R]estriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work." SSR 96-9p, 1996 WL 374185, at *8. Similarly, SSR 85-15 provides that some limitation in climbing and balancing "would not ordinarily have a significant impact on the broad world of work." SSR 85-15, 1985 WL 56857, at *6 (S.S.A. 1985). If a person can stoop or crouch occasionally, "the sedentary and light occupational base is virtually intact." *Id.* Crawling and kneeling are "relatively rare activit[ies] even in arduous work," and limitations on these activities "would be of little significance in the broad world of work." *Id.*

In terms of environmental restrictions, SSR 96-9p states that "few occupations in the unskilled sedentary occupational base require work in environments with …unusual hazards." SSR 96-9p, 1996 WL 374185, at *9. Hazards such as moving machinery and working in high, exposed places "are considered unusual in unskilled sedentary work," and "[e]ven a need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the occupational base." *Id. See also* SSR 85-15, 1985 WL 56857, at *8 (noting that "[a] person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels").

10

Plaintiff asserts that these SSRs are insufficiently clear for purposes of determining the degree to which her precise combination of limitations erode the full sedentary occupational base. The Court finds this assertion untenable in light of *Breslin v. Comm'r of Soc. Sec.*, 509 F. App'x 149 (3d Cir. 2013), a case that is closely analogous to this one.

In *Breslin*, the ALJ found that the claimant had an RFC for light work that was restricted by certain nonexertional limitations including, in relevant part, the claimant's need to "avoid concentrated exposure to hazards such as heights and machinery," his limitation to "occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs," and his inability to climb ladders, ropes or scaffolds. 509 F. App'x at 153 (internal quotation marks omitted). The ALJ relied on SSR 96-9p in concluding that the claimant's nonexertional limitations did not erode his occupational base for sedentary jobs and, applying the medical-vocational guidelines, he determined that the claimant was not disabled. On appeal, the claimant argued that the ALJ was required to review additional vocational evidence beyond the Social Security Rulings, such as testimony from a vocational expert, before concluding that the claimant's nonexertional limitations did not erode his occupational base. The court of appeals rejected this argument, finding that SSR 96-9p "explicitly state[d] the sedentary occupational base is not eroded by Breslin's nonexertional impairments." 509 F. App'x at 155.

Plaintiff also contends that the ALJ erred by failing to provide notice of his intent to rely on the Social Security Rulings in lieu of vocational expert testimony. The same argument was raised and rejected in *Breslin*. The court acknowledged that, "when the ALJ has not provided such advance notice, '[it is] only appropriate to give close scrutiny to the ALJ's reliance on a Ruling.'" 509 F. App'x at 155 (*quoting Allen*, 417 F.3d at 408). The court concluded, however, that because "the rulings the ALJ relied upon ... applied directly to Breslin's nonexertional

11

impairments, the ALJ's reliance on them passes that scrutiny." *Id.* This Court finds, consistent with the ruling in *Breslin,* that the Social Security Rulings relied upon by the ALJ were sufficiently clear in terms of addressing the extent to which Plaintiff's nonexertional limitations impacted her occupational base, and no reversible error occurred by virtue of the ALJ's failure to give advance notice of the fact that he intended to rely on those rulings.

### VII. Conclusion

In light of the foregoing, and because this Court concludes that the Commissioner's findings are otherwise properly supported by substantial evidence in the administrative record, Plaintiff's Motion for Summary Judgment will be denied. Defendant's Motion for Summary Judgment will be granted, and the decision of the Commissioner is affirmed. An appropriate Order follows.

March 25, 2015.

By the Court:

*s/ Cynthia Reed Eddy*
Cynthia reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF